## LISA R. LIPMAN
ATTORNEY AT LAW
145 HUGUENOT STREET, SUITE 402
NEW ROCHELLE, NEW YORK 10801
TEL: (914) 235-8922
FAX: (914) 636-6021

MEMBER N.Y. AND CONN. BARS

MEMO ENDORSED

*Handwritten note:* This letter to be docketed. Doc. 83 is deemed withdrawn. In the future no letters will be accepted unless they have 1" margins and 12-point type. Using smaller margins and fonts to comply with page limits violates at least the spirit and obviously the purpose of those limits. So Ordered.

Cathy Seibel, U.S.D.J.
Dated: 12/22/11

December 21, 2011

Via Telefax (914) 390-4278

Chambers of Hon. Cathy Seibel
United States District Judge
The Hon. Charles L. Brieant Jr.
Federal Building and Courthouse
300 Quarropas Street
White Plains, New York 10601-4150

Re: *Schlenger v. IBM Corporation Inc. and Gary Lipson*
No. 09-CV-3986 (CS)

Dear Judge Seibel:

My co-counsel Gail I. Auster, Esq. and I represent the plaintiff Susan Amy Schlenger ("Plaintiff" or "Schlenger") in the above-referenced case. This letter is written in response to the Endorsed Order, that appeared today as Item 82 in ECF. We have been advised that our prior letter was not received in its entirety and it is respectfully withdrawn. We write to oppose the request of defendants IBM Corporation ("IBM") and Gary Lipson ("Lipson")(collectively "Defendants"), for leave to file a motion to dismiss Plaintiff's Second Amended Complaint.

Defendants' request follows Your Honor's Decision and Order, dated March 31, 2011 ("March 31 Decision"), which denied IBM's motion to dismiss Plaintiff's fraudulent inducement claim and her state law disability discrimination claims, and granted Plaintiff leave to amend those claims. Schlenger filed a Second Amended Complaint ("SAC"), dated November 28, 2011, setting forth these claims, adding Gary Lipson as an individual defendant on the state law disability discrimination claims, and restating her COBRA claim against IBM.

Defendants' claim that the SAC fails to meet the standards for pleading announced by *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009), and *Bell Atlantic Corp. v. Twombly*, 55 U.S. 544, 570 (2007), is wholly devoid of merit. "The plausibility standard [announced in *Iqbal* and *Twombly*] is not akin to a *probability* requirement, but ... asks for more than a *sheer possibility* that a defendant has acted unlawfully." *Iqbal*, 129 S.Ct. at 1950 (emphasis added). *Iqbal* and *Twombly* do not even require a plaintiff to allege the specific facts necessary to establishing a *prima facie* case (see, e.g., *Fagan v. U.S. Carpet Installation, Inc.*, 770 F. Supp.2d 490, 495 (E.D.N.Y. 2011)), but only to allege a short and plain statement of the claim from which a court may infer that the plaintiff may be entitled to relief. The Second Amended Complaint ("SAC") more than meets the *Iqbal* and *Twombley* standards, and corrects the deficiencies set forth by this Court in its March 31 Decision as to both the state law disability discrimination/retaliation claims and the fraudulent inducement claim.

**Discrimination and Retaliation Claims Against IBM Pursuant to the NYS Human Rights Law: Claims 3-6**
Schlenger's SAC sets forth in detail: her work history at IBM (e.g., ¶¶ 7-102)[1]; her very good performance evaluations (e.g., ¶¶ 39-40, 68); her work pre-onset of disability (e.g., ¶¶ 29, 33-40); her requests for accommodations and the denial of same (e.g., ¶¶ 41-44, 46-49, 57-60, 66, 69, 74, 76, 93); the development and course of her disabilities (e.g., ¶¶ 45, 66-67, 74); IBM's worse treatment of her arising from her disabilities and her requests for accommodation (e.g., ¶¶ 42-44, 48-61, 71-79); and IBM's treatment of her after she complained of discrimination (e.g., ¶¶ 80-91).

The SAC explains that Schlenger sought two kinds of accommodations for her disabilities: (1) a reduced work load and schedule; and (2) flex time. By reduced work load and schedule, Plaintiff sought a decrease in her work load for those periods of time when she was recovering from an acute period of disability, such as a hospitalization, when her doctors told her she should start by working part time and work up to working full time. ¶ 42. By flex time, Plaintiff sought to have defendants count *all* the hours that she *did* work, while still allowing her to take intermittent rest

---

[1] ¶¶s refer to the paragraphs in the SAC.



periods as her condition demanded. ¶ 43. Defendants refused both accommodations and, indeed, insisted on selectively using an otherwise unused, antiquated and malfunctioning system for accounting for hours, called TOTALS, to Plaintiff's detriment. ¶¶ 42-43, 50-56, 72-73, 76.

After Schlenger protested that Defendants' treatment of her was discriminating against her on the basis of her disability, Defendants retaliated against her. ¶¶ 55-56, 57, 59-60, 62, 71-73, 75(a)-(h), 76-80. Human Resources acquiesced and participated in the discrimination and retaliation. ¶¶ 81-86. IBM thereafter fired Plaintiff in December 2008. ¶¶ 92-102.

As the detailed factual allegations in Claims Three through Six more than satisfy the requirements of *Iqbal* and *Twombly* and are clearly sufficient to withstand a motion to dismiss, Defendants' efforts to make such the motion should be denied.

**Discrimination and Retaliation Claims Against Lipson Pursuant to the NYS Human Rights Law: Claims 7-8**
The SAC adds Gary Lipson, who became Schlenger's supervisor in or about January 2006, as a defendant, and alleges claims against him individually, pursuant to the "aider and abettor" provision of the NYS Human Rights Law. N.Y. Exec Law § 296(6). These claims are timely, contrary to Defendants' contention, because they relate back to the first Amended Complaint, which is dated November 13, 2009. As Schlenger went out on Long Term Disability on November 14, 2006 (¶ 86), because of Lipson's actions, her claims against him are within the three year statute of limitations under the NYS Human Rights Law.

A federal court presented with a relation back issue such as this uses the "more forgiving principle of relating back," *e.g., Fisher v. County of Nassau*, 2011 U.S. Dist. LEXIS 118269 (E.D.N.Y. 2011), contained in state law. Although modeled on Rule 15(c)(1)(C) of the Fed. R. Civ. P., the New York State Court of Appeals, in its unanimous decision in *Buran v. Coupal*, 87 N.Y.2d 173, 181, 661 N.E.2d 978, 638 N.Y.S.2d 405, 410, 1995 N.Y. LEXIS 4748 (1995), ruled that the third prong of the relation back test, concerning "mistake," had "render[ed] the relation back doctrine meaningless in all but rare circumstances." The court reasoned that the "excusable mistake" prong was already subsumed under the other two prongs of the test, namely, arising out of the same conduct or transaction, and receipt of notice so as not to unduly prejudice the party from defending on the merits. The court noted that eliminating the mistake requirement would not prevent a court from refusing to allow relation back where the plaintiff "omitted a defendant in order to obtain a tactical advantage in the litigation" or to "prevent delay or disruption in the normal course of the lawsuit." *Id.*, 87 N.Y.2d at 181, 638 N.Y.S.2d at 983.

In applying the state law test to this claim, it is clear that Schlenger's claims against Lipson "relate back" and are therefore timely. The claims against Lipson arise from the same occurrences as some of the claims against IBM. There is no prejudice to Lipson where, as here, there has been no discovery in the case. IBM's outside counsel is representing Lipson. Nor has there been delay in asserting these claims. The undersigned first appeared in the case on November 14, 2011, two weeks before the deadline for filing the Second Amended Complaint that raised these claims. That prior counsel had not stated the discrimination/retaliation claims in detail was prior counsel's decision, not the decision of current counsel. Plaintiff is entitled to proceed to the merits of her case and Lipson is clearly implicated under the NY Human Rights Law § 296(6).

Defendants' additional contention requesting dismissal of Claims Seven and Eight, that the SAC fails to meet the *Iqbal* and *Twombly* pleading requirements, is wholly without merit. The SAC details the course of conduct by Lipson that resulted in Plaintiff going out on Long Term Disability leave. After Lipson became Schlenger's supervisor in January 2006 (¶ 70), he told Schlenger she had "returned to work in too much pain" and "too soon." ¶ 71. He kept Schlenger on the TOTALS system (¶¶ 72-73), did not adjust her work load after her third hospitalization in March 2006 (¶ 74), and engaged in a course of conduct that was obviously discriminatory (¶¶ 75(a)-(h), 76). On the heels of an exchange in which Schlenger again asked for flex time as a reasonable accommodation to her disability, Lipson decided to begin an out-of-schedule performance evaluation (¶¶ 77-79). Schlenger reported his discrimination and retaliation based upon her disabilities and history of same to Human Resources (¶ 80). Ultimately, Human Resources told Schlenger she could take Long Term Disability or be fired by Lipson. ¶¶ 84-85. There is more than sufficient detail in the factual allegations to support a claim that Lipson "aided and abetted" the discrimination and retaliation by IBM. N.Y. Exec. Law § 296(6).

Therefore, leave to make a motion to dismiss as to the Seventh and Eighth Claims for discrimination and retaliation against Lipson should be denied as futile.

**Fraudulent Inducement Claim: Claim 1**
Defendants' contention that Schlenger's fraudulent inducement claim should be dismissed is also wholly without merit. In SAC ¶ 16(a)-(l), Schlenger clearly identifies the material, false representations of fact that were made by Joyce Koontz, Department Group Manager (¶ 14) and/or Ronald Rinner, a Manager in Business and Government Relations at IBM Research who reported to Koontz (¶¶ 9, 14) when they invited Schlenger to dinner at the end of her day-long series of interviews for her position (¶¶ 14-16), thereby satisfying the who, what, when and where pleading requirement of a fraudulent inducement claim. The statements in SAC ¶ 16(a)-(l) are neither "vague" nor "subjective"

as Defendants contend; e.g., "While Koontz and Rinner wanted [plaintiff] to come into the office, when she came into the office would be primarily up to her" (¶ 16(c)); "Her relocation package would provide for an equity advance out of her present home..." (¶ 16(j)).

The SAC further alleges Schlenger's reasonable reliance on the present misrepresentations of material fact made by her future supervisor and his supervisor (¶¶ 14-16), as they addressed Schlenger's specific concerns about accepting employment. To the extent that they were speaking on matters beyond their personal knowledge, they should have, and certainly could have, told Schlenger that they would "get back to her" on those matters, rather than recklessly giving her false information. Schlenger has alleged facts sufficient to show that Defendants had both motive and opportunity to commit fraud, and/or facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness (*Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)) to wit: Koontz and Rinner made the representations about the relocation package containing an equity provision when they knew Schlenger's relocation package would not contain such a provision (¶¶ 17, 19-20, 24-26); and Koontz and Ritter made these statements for the purposes of inducing Schlenger to accept employment at IBM (¶ 17) because, in part, they were anxious to fill a position "which had been vacant for a substantial period of time, and which was causing them harm" (¶ 21).

Further, Defendants' reliance on *Buckman v. Clayon Secs (USA) Inc.*, No. 09 CIV 6566 (SAS), 2011 U.S. Dist. LEXIS 104437, at *40 (S.D.N.Y., Sept. 14, 2011) and *Sheth v. N.Y. Life Ins. Co.*, 273 A.D.2d 72, 74 (1st Dept. 2000) is misplaced. The passage relied on by Defendants in *Buckman* is, at most, *dicta*. It refers to allegations made in the complaint on which that plaintiff did not rely in opposing the summary judgment motion, and, indeed, on which plaintiff produced no evidence. In *Sheth*, the state court decision does not even state the allegedly fraudulent misrepresentations in its decision, giving the reader no basis for comparison with the statements in suit here; rather, that decision merely says that the statements "are conclusory and/or constitute mere puffery, opinions of value or future expectations." Thus *Sheth*, at most, states a general rule without explaining why that rule applies to the statements brought by that plaintiff. Schlenger, in contrast, raised particular concerns about coming to work for IBM to Koontz and Rinner, which they addressed during their dinner meeting with her.

Defendants raise a statute of limitations argument in regard to Schlenger's fraudulent inducement claim that this Court previously addressed at some length in its March 31 Decision at pp. 50-53, where it rejected Defendants' argument. Moreover, the questions raised in the March 31 Decision are addressed in the SAC, making it more clear that there is no statute of limitations defense. The contract of employment was contingent, as the Court correctly stated in its March 31 Decision, and the conditions precedent were not completed until Plaintiff appeared for her first day of work on December 1, 2003 (¶ 29): "When Schlenger reported for her first day of work on December 1, 2003, she received and completed paperwork on which the offer of employment was contingent, including [various documents named and] incorporated by reference as if fully set forth herein." ¶ 32. Plaintiff began incurring expenses -- and losses -- as of on or around November 28, 2003, when she moved (¶ 27).

In sum, the SAC (especially ¶¶ 15-29, read together with ¶¶ 103-110) sufficiently plead a claim for fraudulent inducement and IBM's request for leave to file a motion to dismiss should be denied.

### COBRA Claim: Claim 2
Schlenger's COBRA claim is sufficiently pled. In the first instance, IBM as the Plan Sponsor was responsible for the paperwork for an employee's COBRA coverage. IBM was also the Plan Administrator. Monthly COBRA payments were made by the Plaintiff to IBM and were accepted by IBM. IBM as the Plan Administrator knew or should have known the requirements of the Plan but failed to follow those requirements, including but not limited to including Plaintiff's deceased son as a beneficiary and the failure of coverage after premiums had been paid by Schlenger to IBM. Plaintiff pleads no ERISA retaliation claim. Plaintiff laid out a *prima facie* claim for relief pursuant to ERISA § 502(a)(1)(B). Further, Defendant's claim that it does not know "whether it may legitimately assert any affirmative defenses" is not only disingenuous but is also not a basis for dismissal. Defendant is free to raise any affirmative defense it wishes; however, in order to prevail upon an affirmative defense, IBM must meet its burden of proof. This is an issue which is ripe for discovery.

### Conclusion
In sum, the SAC is not a set of "conclusory allegations." Defendants' request for leave to file a motion on all claims should be denied as a motion to dismiss would be futile.

Respectfully,

Lisa R. Lipman

cc: Allan S. Bloom, Esq.
Paul Hastings LLP
Gail I. Auster, Esq.

# LISA R. LIPMAN
Attorney At Law
145 Huguenot Street, Suite 402
New Rochelle, New York 10801

Member N.Y. and Conn. Bars
Email: LRLipman@aol.com
Tel: (914) 235-8922                                          Fax: (914) 636-6021

## FACSIMILE COVER SHEET

DATE: 12/21/11

TO: Hon. Cathy Seibel

COMPANY/FIRM NAME: U.S.D.C., S.D.N.Y.

TELEFAX NUMBER: (914) 390-4278

RE: *Schlenger v. IBM Corporation et ano.*
    09-CV-3986 (CS)

NUMBER OF PAGES INCLUDING THIS COVER SHEET: 4

INSTRUCTIONS:

**Letter to Judge Seibel of today's date responding to Endorsed Order (ECF Item 82) letter by Allan S. Bloom, Esq., dated December 16, 2011**

## CONFIDENTIALITY NOTE

The pages accompanying this facsimile transmission contain information from the law firm of Lisa R. Lipman, Esq. which is confidential and/or privileged. The information is intended to be for the use of the individual or entity named on this cover sheet. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited. If you have received this facsimile in error, please notify me by telephone immediately so that I can arrange for the retrieval of the original documents at no cost to you.
**IF THERE IS ANY PROBLEM WITH THIS TRANSMISSION, PLEASE CALL ME IMMEDIATELY AT (914) 235-8922.**