ALLAN S. BLOOM
ERIN E. LARUFFA
PAUL HASTINGS LLP
75 East 55th Street
New York, New York 10022
(212) 318-6000

*Attorneys for Defendants*
INTERNATIONAL BUSINESS MACHINES CORPORATION and
GARY LIPSON

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SUSAN AMY SCHLENGER, | 09-CV-3986 (CS) |
| Plaintiff, | |
| - against - | |
| FIDELITY EMPLOYER SERVICES COMPANY, *et al.*, | |
| Defendants. | |

**IBM DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF
THEIR MOTION TO DISMISS THE FOURTH AMENDED COMPLAINT**

# TABLE OF CONTENTS

Page

I.  THE FOURTH AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR FRAUDULENT INDUCEMENT .......................................................... 1

    A.  Equity Advance ............................................................................................ 1

    B.  Schlenger's Husband's Placement Assistance ........................................... 2

    C.  Opinion Regarding Sale Of Farm Property ............................................... 2

    D.  Relocation Costs ......................................................................................... 2

    E.  Other Alleged Misrepresentations ............................................................ 2

II.  PLAINTIFF'S ERISA SECTION 502 CLAIMS MUST BE DISMISSED ......................... 3

    A.  IBM Is Not A Proper Defendant On Plaintiff's Section 502 Claim .......................... 3

    B.  Plaintiff's Section 502 Claim Fails To State A Claim Against IBM ......................... 3

    C.  Plaintiff Failed To Exhaust Her Administrative Remedies ...................................... 4

    D.  Plaintiff Has No Standing To Sue ............................................................... 5

III.  PLAINTIFF FAILS TO STATE AN HRL CLAIM ............................................................ 5

    A.  Plaintiff's Seventh And Eighth Claims Are Time-Barred ........................................ 5

    B.  Plaintiff Does Not Plead A "Hostile Work Environment" ......................................... 6

    C.  Plaintiff Does Not State A Claim For Discriminatory Discharge ............................. 7

    D.  Plaintiff Does Not State A Claim For Retaliation ...................................... 8

        1.  Plaintiff's allegations do not support a causal connection .............................. 8

        2.  Plaintiff's attempts to fabricate causation fail ............................... 9

IV.  PLAINTIFF FAILS TO STATE A CLAIM AGAINST DEFENDANT LIPSON ............... 9

V.  PLAINTIFF IS NOT ENTITLED TO A FIFTH AMENDED COMPLAINT .................... 10

## <u>TABLE OF AUTHORITIES</u>

CASES                                                                                                                     Page(s)

*Apionishev v. Columbia Univ.*,
  No. 09 civ. 6471 (SAS), 2011 WL 1197637 (S.D.N.Y. Mar. 25, 2011) ...................................6

*Brennan v. Metro. Opera Ass'n*,
  192 F.3d 310 (2d Cir. 1999)...................................................................................................6

*Clark County Sch. Dist. v. Breeden*,
  532 U.S. 268 (2001)............................................................................................................8, 9

*Esmilla v. Cosmopolitan Club*,
  No. 09 Civ. 10169 (DF), 2011 WL 814007 (S.D.N.Y. Mar. 3, 2011)................................9, 10

*Espinal v. Goord*,
  558 F.3d 119 (2d Cir. 2009)....................................................................................................9

*Giles v. NBC Universal, Inc.*,
  No. 10-7461 (DAB), 2011 WL 4376469 (S.D.N.Y. Sept. 20, 2011) ......................................8

*Hayles v. Advanced Travel Mgmt. Corp.*,
  No. 01 Civ. 10017 (BSJ) (DFE), 2004 WL 26548 (S.D.N.Y. Jan. 5, 2004) ...........................7

*Hongyan Lu v. Chase Inv. Services Corp.*,
  412 Fed. Appx. 413 (2d Cir. 2011).........................................................................................6

*Leak v. Cigna Healthcare*,
  423 F. App'x 53 (2d Cir. 2011) ..............................................................................................4

*Leonelli v. Pennwalt Corp.*,
  887 F.2d 1195 (2d Cir. 1989)..................................................................................................3

*Longo v. Butler Equities II, L.P.*,
  278 A.D.2d 97 (1st Dep't. 2000) .........................................................................................1, 2

*McCarthy v. Dun & Bradstreet Corp.*,
  482 F.3d 184 (2d Cir. 2007)..................................................................................................10

*Meyercord v. Curry*,
  38 A.D.3d 315 (1st. Dep't 2007) ............................................................................................2

*National Railroad Passenger Corp. v. Morgan*,
  536 U.S. 101 (2002)................................................................................................................6

*Nechis v. Oxford Health Plans, Inc.*,
  421 F.3d 96 (2d. Cir. 2005).................................................................................................4, 5

## TABLE OF AUTHORITIES
(*continued*)

**Page(s)**

*Novak v. Kasaks,*
    216 F.3d 300 (2d Cir.), *cert. denied*, 531 U.S. 1012 (2000) ........................................................3

*Patane v. Clark,*
    508 F.3d 106 (2d Cir. 2007) ....................................................................................................6

*Perrotti v. Becker, Glynn, Melamed & Muffly,*
    82 A.D.3d 495 (1st Dep't. 2011) ...........................................................................................1

*Petrosino v. Bell Atl.,*
    385 F.3d 210 (2d Cir. 2004) ....................................................................................................7

*Stepheny v. Brooklyn Hebrew Sch. for Special Children,*
    356 F. Supp. 2d 248 (E.D.N.Y. 2005) ....................................................................................7

*Stewart v. Jackson & Nash,*
    976 F.2d 86 (2d Cir. 1992) .................................................................................................1, 2

**STATUTES**

29 U.S.C. § 1132 .................................................................................................................................3

**RULES**

CPLR § 214(2) ....................................................................................................................................5

FRCP 9(b) ...........................................................................................................................................3

**OTHER AUTHORITIES**

EEOC Enforcement Guidance on Disability-Related Inquiries and Medical Examinations of
    Employees Under the ADA (7/27/00) ....................................................................................8

http://www.recovery.gov/about/pages/the_act.aspx ........................................................................4

Nothing in Plaintiff's brief ("Pl. Mem.") opposing the IBM Defendants'[1] motion to dismiss the Fourth Amended Complaint ("FAC") gives the Court any reason to deny the motion.

## I.     THE FOURTH AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR FRAUDULENT INDUCEMENT

Contrary to Plaintiff's argument, courts frequently grant motions to dismiss fraudulent inducement claims that are based on vague, subjective, or opinion statements or statements of future intent, or where reliance was unreasonable, as Plaintiff's claims are here.  *E.g., Longo v. Butler Equities II, L.P.*, 278 A.D.2d 97, 97 (1st Dep't. 2000) (affirming dismissal of fraud claim based on "opinion [and] mere puffing"); *Stewart v. Jackson & Nash*, 976 F.2d 86, 89 (2d Cir. 1992) ("promissory statements as to what will be done in the future" cannot support fraudulent inducement claim); *Perrotti v. Becker, Glynn, Melamed & Muffly*, 82 A.D.3d 495 (1st Dep't. 2011) (affirming dismissal of fraudulent inducement claim when reliance not reasonable).

None of the statements that Plaintiff attributes to Ronald Rinner or Joyce Koontz legally support a claim for fraudulent inducement:

### A.     Equity Advance

Rinner's or Koontz's alleged statement that Plaintiff would receive an equity advance (FAC ¶ 16(j)) is not actionable.  Plaintiff received—*after the Rinner or Koontz conversation*—a detailed offer letter containing the terms of IBM's offer of employment.  Plaintiff counter-signed the letter on November 5, 2003, accepting IBM's offer of employment on the terms set forth therein.  (*See* Bloom Aff.[2] Ex. A.)  It is not reasonable for Plaintiff to have relied on any alleged promises not contained in her offer letter.  In addition, even if Rinner or Koontz made such a statement, it is a promise as to what will happen in the future, and therefore cannot be fraud.  *See*

---

[1] The "IBM Defendants" are International Business Machines Corporation ("IBM") and Gary Lipson.

[2] "Bloom Aff." refers to the Affidavit of Allan S. Bloom, dated March 15, 2012.

*Stewart*, 976 F.2d at 89.

**B.      Schlenger's Husband's Placement Assistance**

Rinner's or Koontz's alleged statement that Plaintiff's husband would receive "wide-ranging placement assistance" is also a statement as to what will happen in the future, and therefore cannot be fraud.  *Id.* at 89.  Moreover, Plaintiff does not allege that her husband requested and was denied assistance, and therefore has not pled an essential element of the claim.[3]

**C.      Opinion Regarding Sale of Farm Property**

Rinner's or Koontz's alleged statement that "they had no doubt that [IBM's relocation] company would be able to sell a farm" is an opinion, not actionable as fraud.  *See Longo*, 278 A.D.2d at 97.  Plaintiff also fails to plead that she never sold her farm (*see* FAC), and therefore has not pled the required transaction and loss causation. *See Meyercord*, 38 A.D.3d at 316.

**D.      Relocation Costs**

Rinner's or Koontz's alleged statement that Plaintiff "would not incur high temporary housing costs as she would be able to easily find a suitable family home" does not contradict Koontz's alleged later statement that it was "common to lose at least $30,000 in relocating."  S*ee* Pl. Mem. at 12.)  A fact finder could not reasonably infer from the later statement that Koontz knew the earlier statement was false when made, as Plaintiff urges.

**E.      Other Alleged Misrepresentations**

Plaintiff's opposition brief does not address any of the other statements allegedly made by Rinner or Koontz, and therefore Plaintiff's First Claim should be dismissed to the extent

---

[3] *See, e.g., Meyercord v. Curry*, 38 A.D.3d 315, 316 (1st Dep't 2007) ("An essential element of plaintiff's claims for…fraudulent inducement…is detrimental reliance….'  Plaintiff must show both that defendant's misrepresentation induced plaintiff to engage in the transaction in question (transaction causation) and that the misrepresentations directly caused the loss about which plaintiff complains (loss causation).'") (internal citations omitted).

based on such other allegations for the reasons discussed in the IBM Defendants' opening brief.[4]

## II.      PLAINTIFF'S ERISA SECTION 502 CLAIMS MUST BE DISMISSED

Plaintiff's Second Claim, based on IBM's alleged failure to provide post-employment health insurance benefits, should also be dismissed.[5]  Plaintiff seeks relief under Section 502 of ERISA, 29 U.S.C. § 1132(a)(1)(B) ("Section 502").  Section 502 allows a plan beneficiary "to recover benefits due to him under the terms of his plan."  29 U.S.C. § 1132(a)(1)(B).  Plaintiff's Section 502 claim fails because:  (1) IBM is not the proper defendant; (2) IBM did not send the COBRA notices underlying the claim; (3) Plaintiff failed to exhaust her administrative remedies; and (4) Plaintiff lacks standing to sue.

### A.      IBM Is Not A Proper Defendant On Plaintiff's Section 502 Claim

Plaintiff mistakenly argues that IBM can be sued under Section 502 as a "plan sponsor."  This misstates the law.  Section 502 claims may only be brought against an ERISA plan itself, the plan administrator, or a plan trustee.  *See Leonelli v. Pennwalt Corp.*, 887 F.2d 1195, 1199 (2d Cir. 1989) ("In a recovery of benefits claim, only the plan and the administrators and trustees of the plan in their capacity as such may be held liable.") (*citing* 29 U.S.C. § 1132(d)).  Plaintiff does not allege or argue that IBM is the administrator or a trustee of the plan at issue.  For this reason, Plaintiff's Section 502 claim should be dismissed as against IBM.

### B.      Plaintiff's Section 502 Claim Fails To State A Claim Against IBM

In the FAC, Plaintiff's alleges that IBM violated COBRA by "denying" her health insurance.  In her opposition brief, Plaintiff recasts her ERISA claim, arguing that IBM sent her COBRA notices that did not conform with USDOL regulations because they contained conflicting

---

[4] In addition, Plaintiff attributes allegedly fraudulent statements to Rinner or Koontz, but does not identify which of Rinner or Koontz *actually made* each statement.  Plaintiff's fraudulent inducement claim should be dismissed on this additional ground.  *See* FRCP 9(b) (requiring a plaintiff pleading fraud to "identify the speaker"); *Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir.) (same), *cert. denied*, 531 U.S. 1012 (2000).

information regarding premiums and therefore "prevented" her from making an informed decision about whether or not to elect COBRA benefits.  But in an earlier stage of this litigation—when Plaintiff attempted to hold former co-defendant Fidelity liable on a similar claim—*Plaintiff admitted that Fidelity sent the notices*, not IBM.  (*See* Pl. Rule 56.1 Counter-Statement, Docket #54, ¶ 32.).  By Plaintiff's own admission, IBM did not send the COBRA notices and therefore cannot be held liable for allegedly conflicting statements in them.[6]

### C.   Plaintiff Failed To Exhaust Her Administrative Remedies

Plaintiff now admits—contrary to an allegation in her Fourth Amended Complaint (FAC ¶ 115)—that she failed to exhaust her administrative remedies. (Pl. Mem. at 14.)  Plaintiff's argument that she is not required to exhaust is not based on existing law, as she concedes.

A plaintiff must exhaust administrative remedies under the plan before pursuing an ERISA action in court.  *See, e.g., Leak v. Cigna Healthcare*, 423 F. App'x 53, 53 (2d Cir. 2011).  Plaintiff tries to avoid this requirement by arguing that exhaustion is necessary only on "plan-based," and not "statute-based," claims.  (Pl. Mem. at 14.)  But in the next breath, Plaintiff admits that the Second Circuit has never so held.  (*Id.*)[7]

---

(...continued)

[5] Plaintiff withdrew her Third and Fourth Claims, also based on ERISA.  (*See* Pl. Mem. at 1.)

[6] Plaintiff's Section 502 claim is not saved by her allegation that she never received a reduction in premium amounts under the American Recovery and Reinvestment Act of 2009 ("ARRA").  Congress passed ARRA on February 13, 2009.  *See* http://www.recovery.gov/about/pages/the_act.aspx.  Plaintiff alleges, however, that she gave up on her IBM-sponsored health insurance *in January 2009* after a doctor's office told her that she did not have insurance to cover a procedure.  (*See* FAC ¶¶ 134, 142.)  As such, Plaintiff had already rejected IBM-sponsored health insurance before she could have been entitled to an alleged reduction under ARRA.

[7] *See Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 101-02 (2d. Cir. 2005) ("Some courts have held that exhaustion is not required for statutory claims, while others apply the exhaustion doctrine to both plan-based and statutory claims.  This circuit has not addressed the specific question … but has consistently recognized that the primary purposes of … exhaustion … are to '(1) uphold Congress' desire that ERISA trustees be responsible for their actions, not the federal courts; (2) provide a sufficiently clear record of administrative action if litigation should ensue; and (3) assure that any judicial review of fiduciary action (or inaction) is made under the arbitrary and capricious standard, not *de novo*.'") (citations omitted).

In any event, the FAC clearly pleads a *plan-based* claim.  Plaintiff alleges that a pharmacy and a doctor's office told her that she did not have insurance coverage for certain services and that the IBM Employee Services Center told her she *was* covered; she does not allege that she received notice from IBM that she was not covered.  (*See* FAC ¶¶ 128, 132-33.)  Plaintiff's Section 502 claim goes to whether she was covered under the terms of the plan.[8]

### D.      Plaintiff Has No Standing To Sue

Plaintiff lacks standing to sue under Section 502 because she relinquished her IBM insurance and was no longer a plan participant when she filed suit.  *See Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 101 (2d. Cir. 2005) (dismissing Section 502 claim brought by former employee who was no longer participant in insurance plan at time she filed suit, because Section 502 only provides cause of action to "participants, beneficiaries, or fiduciaries").

## III.    PLAINTIFF FAILS TO STATE AN HRL CLAIM

The Court should dismiss Plaintiff's Human Rights Law ("HRL") claims.

### A.      Plaintiff's Seventh And Eighth Claims Are Time-Barred

Claims under the HRL are subject to a three-year statute of limitations.  *See* CPLR § 214(2).  Plaintiff first asserted claims against IBM in her First Amended Complaint, filed November 13, 2009.[9]  To be actionable, therefore, Plaintiff's HRL claims must be based on events that post-date November 13, 2006.

Plaintiff admits that "[t]emporally, Claims Seven and Eight [for discrimination and retaliation during her employment] encompass all events through the date [P]laintiff began her full-time disability leave on November 14, 2006."  (Pl. Mem. at 15.)  At best, Plaintiff alleges a series of discrete acts that pre-date the beginning of the limitations period.  These claims must be dismissed,

---

[8] Plaintiff's argument that exhaustion was "futile" makes no sense given her admission that IBM's Employee Services Center told her she *was* insured.

[9] IBM was not a defendant in Plaintiff's initial complaint in this lawsuit.

and Plaintiff has no right to take discovery on them.[10]

### B.    Plaintiff Does Not Plead A "Hostile Work Environment"

Plaintiff refers to a "hostile work environment" in her opposition brief in a misguided attempt to place time-barred events before the Court.  But the First Amended Complaint does not even *contain* a "hostile work environment" claim.  To sustain a "hostile work environment claim," Plaintiff must establish conduct that "(1) is objectively severe or pervasive …; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment **because of** the plaintiff's [membership in a protected class]."  *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (emphasis added).  In other words, Plaintiff must establish that IBM created an objectively and subjectively hostile work environment and that it did so because of her disability.  *See id.*  When evaluating such claims, courts consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Brennan v. Metro. Opera Ass'n*, 192 F.3d 310, 318 (2d Cir. 1999).

None of the allegations in the Fourth Amended Complaint suggest remotely that Plaintiff suffered a "hostile work environment," let alone that she suffered a "hostile work environment" **because of** her disability.  To the contrary, by Plaintiff's own admissions, IBM made accommodations so that Plaintiff could return to work after *three* hospitalizations.  (FAC ¶¶ 45, 46,

---

[10] *See National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101, 113-14, 122 (2002) ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges….[Instead], [e]ach discrete discriminatory act starts a new clock for filing charges alleging that act," and even serial violations—a series of discrete but related acts of discrimination—do not warrant application of the continuing violations doctrine."); *see.also Hongyan Lu v. Chase Inv. Services Corp.*, 412 Fed. Appx. 413, 416 (2d Cir. 2011) (dismissing claims based on discrete acts of alleged discrimination as time barred because "multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation") (internal citation omitted); *Apionishev v. Columbia Univ.*, No. 09 Civ. 6471 (SAS), 2011 WL 1197637, at *6 n.79 (S.D.N.Y. Mar. 25, 2011) ("The conduct upon which [plaintiff's HRL] claims are predicated … involves a series of discrete acts that must each, individually, comply with the relevant statutory timing provisions.").

47, 50, 66-67, 74.)  Plaintiff's performance ratings and compensation did not change after she

reported her medical issues.  (*Id.* ¶ 40.)  At most, Plaintiff argues that she had to use short-term

disability ("STD") benefits when she rested during the workday even though she worked on

Sundays; her workload was not reduced as much as she wanted; and Lipson once commented she

was "too sick to work." (Pl. Mem. at 17-18.)  Courts have dismissed hostile work environment

claims based on allegations far more egregious than those at issue here.[11]

### C.    Plaintiff Does Not State A Claim For Discriminatory Discharge

To support her discriminatory discharge claim, Plaintiff alleges that IBM terminated

her employment two weeks after the long-term disability ("LTD") carrier determined she was able

to work; required her to provide a doctor's note certifying that she could work; told her the

company would provide postings for positions within IBM after she submitted that note; and did not

give her enough time to obtain a doctor's note.  (Pl. Mem. at 20.)

In reality, Plaintiff admits that in December 2008, Marisa Madori in IBM Human

Resources contacted her and invited her to return to work.  (FAC ¶ 92.)  Plaintiff admits that she

told Madori that she (Plaintiff) could not work without accommodations.  (*Id.* ¶¶ 93-95.)  Plaintiff

admits that Madori agreed to provide Plaintiff with internal job postings after Plaintiff provided

IBM with a doctor's note clearing Plaintiff to work and describing what accommodations Plaintiff

would need in order to return to work, if any.  (*Id.* ¶ 99.)

Plaintiff does not refute that IBM was entitled to request information from her doctor

---

[11] *See, e.g.*, *Stepheny v. Brooklyn Hebrew Sch. for Special Children*, 356 F. Supp. 2d 248, 264 (E.D.N.Y. 2005) (plaintiff's being called "white bitch" five times over five months not sufficiently pervasive to constitute hostile work environment); *Hayles v. Advanced Travel Mgmt. Corp.*, No. 01 Civ. 10017 (BSJ) (DFE), 2004 WL 26548, at *19 (S.D.N.Y. Jan. 5, 2004) (dismissing race discrimination claims and categorizing as "stray" alleged comments from supervisor that "black women have the biggest asses" and comments such as "black queen," "spook," and "stupid black bitch"); *see also Petrosino v. Bell Atl.*, 385 F.3d 210, 223 (2d Cir. 2004) ("[O]ffhand comments [and] isolated incidents of offensive conduct" are insufficient to create a hostile work environment").

about accommodations she needed.[12]  But Plaintiff admits she refused to provide such

documentation.  (FAC ¶ 97.)  None of these events remotely suggest *disability discrimination* on

IBM's part.  Plaintiff's Fifth Claim should be dismissed.

### D.    Plaintiff Does Not State A Claim For Retaliation

Plaintiff's alternative discharge theory—that IBM terminated her employment in

retaliation for her seeking accommodations and for her internal complaint—is not plausible.

### 1.    *Plaintiff's allegations do not support a causal connection*

To state a claim for retaliation, Plaintiff must allege, among other elements, that

there is a causal connection between some protected activity and some adverse employment action.

*E.g.*, *Giles v. NBC Universal, Inc.*, No. 10-7461 (DAB), 2011 WL 4376469, at *3 (S.D.N.Y. Sept.

20, 2011).  No such connection exists here.  Plaintiff first began experiencing back pain in May

2005 (FAC ¶ 41); began seeking accommodations at that same time (*id.* ¶ 41); and filed an internal

complaint with IBM in approximately May 2006.  (*id.* ¶¶ 81, 99.)  Plaintiff continued to work for

IBM as an active employee until mid-November 2006.  (*Id.* ¶ 86.)  Plaintiff's performance ratings

and compensation remained the same before and after she began experiencing health problems.  (*Id.*

¶¶ 40, 68.)  Plaintiff then was on disability leave for more than two years.  (*Id.* ¶ 86.)  If IBM

wanted to retaliate, it had ample opportunity to terminate Plaintiff before she went on leave, or in

the years that followed.  To the contrary, two years later, *IBM invited Plaintiff to return to work and*

*agreed to provide internal job postings* once Plaintiff provided information from her doctor.  (*See*

*id.* ¶ 99.)  IBM warned Plaintiff that if she refused to provide such information, her employment

would end.  Nothing in this fact suggests retaliation—particularly given the *years* that passed

between Plaintiff's complaint and her termination.  *See Clark County Sch. Dist. v. Breeden*, 532

---

[12] The EEOC has recognized such inquiries as permissible.  *See* EEOC Enforcement Guidance on Disability-
Related Inquiries and Medical Examinations of Employees Under the ADA (7/27/00).

U.S. 268, 274 (2001) (20-month gap "suggests, by itself, no causality"); *see also* cases cited in Defendants' opening brief, at 24.[13]

### 2.   *Plaintiff's attempts to fabricate causation fail*

Plaintiff's attempts to fabricate causation—by arguing that IBM terminated her employment only two weeks after the LTD carrier affirmed its decision that Plaintiff was able to work—make no sense.  By December 2008, *years* had passed since Plaintiff first requested accommodations in May 2005.  IBM asked Plaintiff to return to work in December 2008, and only separated her after she refused to provide a doctor's note.  IBM was not required to provide job postings *before* receiving the note.  Plaintiff's conclusion that IBM knew she needed to find a doctor is unavailing because *Plaintiff did not request more time to provide the note*.

## IV.   PLAINTIFF FAILS TO STATE A CLAIM AGAINST DEFENDANT LIPSON

Plaintiff's Ninth and Tenth Claims against Lipson are time barred.  There is no basis on which Plaintiff can ask the Court to have her Second Amended Complaint—the first to allege claims against Lipson—relate back to her November 13, 2009 First Amended Complaint.  When a plaintiff amends her complaint to add a new party, the amendment relates back to original complaint *only* if, among other things, "the party to be brought in by amendment … knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."  *Esmilla v. Cosmopolitan Club*, No. 09 Civ. 10169 (DF), 2011 WL 814007, at *3 (S.D.N.Y. Mar. 3, 2011).  The test is *not* whether discovery has completed.  Here, Lipson, Plaintiff's former supervisor, was referenced repeatedly in the First Amended Complaint, by name.

---

[13] The cases cited by Plaintiff involve significantly shorter periods of time, as well as direct evidence of a causal connection.  *E.g., Espinal v. Goord*, 558 F.3d 119, 122, 129 (2d Cir. 2009) (Section 1983 retaliation claim survived summary judgment because of "the passage of only six months between the dismissal of Espinal's lawsuit and the allegedly retaliatory beating by officers"; plaintiff claimed that, as they beat him, officers said, "this is what happens to [i]nmates when they submit law suits against us").  No such direct evidence exists here.

Plaintiff knew of his actions when she filed the First Amended Complaint, and could have sued him then.  That she chose not to was a strategic choice—not a mistake concerning Lipson's identity, as is required to sustain a "relation back" argument.  *See Esmilla*, 2011 WL 814007, at *4 (denying motion to amend to add individual defendants mentioned in original complaint, including plaintiff's supervisor, whom original complaint alleged engaged in specific misconduct).  The claims against Lipson must be dismissed.[14]

## V.     PLAINTIFF IS NOT ENTITLED TO A FIFTH AMENDED COMPLAINT

Courts deny leave to amend if doing so is futile.  *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  No case could be more futile.  Plaintiff has filed five complaints, and has not stated a single claim.  It is time to close this case.

Dated:  New York, New York
        May 25, 2012

Respectfully submitted,

PAUL HASTINGS LLP

By:     _____

        Allan S. Bloom
        Erin E. LaRuffa

75 East 55th Street
New York, New York 10022
(212) 318-6000
allanbloom@paulhastings.com

*Attorneys for Defendants*
INTERNATIONAL BUSINESS MACHINES
CORPORATION and GARY LIPSON

---

[14] While she pins the original decision not to sue Lipson on her prior counsel, Plaintiff—herself an experienced attorney—cannot avoid a statute of limitations simply by switching counsel.

| | |
|---|---|
| SUSAN AMY SCHLENGER,<br><br>Plaintiff,<br><br>- against -<br><br>FIDELITY EMPLOYER SERVICES COMPANY,<br>LLC, IBM CORPORATION, and METROPOLITAN<br>LIFE INSURANCE COMPANY,<br><br>Defendants. | 09-CV-3986 (CS)<br><br><br>**CERTIFICATE OF SERVICE** |

I hereby certify that on May 25, 2012, the foregoing was served by UPS overnight delivery upon:

Lisa R. Lipman
145 Huguenot Street, Suite 402
New Rochelle, New York 10801
*Attorney for Plaintiff*

Gail I. Auster
Law Offices of Gail I. Auster & Associates, P.C.
17 Battery Place, Suite 711
New York, New York 10004
*Attorney for Plaintiff*

Further, the foregoing was filed electronically with the Court's CM/ECF System.

Dated: New York, New York
       May 25, 2012

                                                                ALLAN S. BLOOM

11